IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TONY P. WELCH | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:15cv335 |
| | ) | |
| v. | ) | |
| | ) | |
| FCA US LLC, | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Tony Welch ("Welch") filed a complaint *pro se* against Defendant FCA US, LLC ("FCA"). Welch's complaint alleges four counts: (I) Violation of the Motor Vehicle Manufacturer's Warranty Adjustment Act, Va. Code § 59.1-207, (II) Violation of the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 301, (III) Unjust Enrichment, and (IV) Breach of Warranty under the Magnum-Moss Warranty Act, 15 U.S.C. § 2301. FCA filed a motion to dismiss the complaint, which has been referred to me for report and recommendation under 28 U.S.C. § 636(b)(1)(B). I have carefully considered the pleadings filed, the legal memoranda submitted, the arguments of counsel and the plaintiff, and the applicable law and **RECOMMEND** that the court **DISMISS** Plaintiff's complaint for failure to state a claim, or, alternatively that the court **TRANSFER** this matter to the United States District Court of the Southern District of New York for referral to its bankruptcy court.

1

## BACKGROUND

On June 11, 2013, Welch purchased a used 2004 Dodge Durango ("the vehicle") from an undisclosed seller in New Jersey. Welch test drove the vehicle and found no mechanical problems after a visual inspection. He then drove the vehicle back to his home in Roanoke, Virginia without issue. However, in June and July of 2013, substantial rain fell on the vehicle. On July 6, 2013, Welch noticed that water had accumulated inside the vehicle on the floor of driver's side, despite the windows and sunroof being closed. Upon starting the vehicle, it made a loud knocking noise and the check engine light illuminated. Welch opened the hood and noticed water and moisture on the engine components. He towed the vehicle to the local Dodge dealership for diagnosis. For an unexplained reason, Welch did not have the vehicle repaired at that time, but instead towed the vehicle home. Then, on May 11, 2015, he again towed the vehicle to the Dodge dealership and paid $8,830.51 to have the engine repaired. However, on June 15, 2015, five days after receiving the repaired vehicle from the dealership and after a rain storm, the engine again began to knock and the check engine light illuminated. Welch has not driven the vehicle since.

Welch alleges that a defect in the vehicle's cowl panel allowed water to enter the engine compartment. When he started the vehicle, that water entered the engine and damaged it. Welch alleges that despite having notice of this defect, FCA refused to acknowledge the problem or take steps to correct the problem.

FCA contends that it is not liable for the damage to Welch's vehicle. In support of its position, FCA notes that Chrysler actually manufactured Welch's vehicle. In 2009, Chrysler filed for chapter 11 bankruptcy protection in the bankruptcy court for the Southern District of New

York. Pursuant to a sale order entered on June 1, 2009, Chrysler sold substantially all of its assets to an entity that eventually became known as FCA, which maintains that the terms of the court's sale order and the Master Transaction Agreement ("MTA") with Chrysler did not transfer liability for Welch's claims to FCA.

FCA's motion initially moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) and in the alternative, sought a transfer of venue of this case to the Bankruptcy Court in the Southern District of New York pursuant to 28 U.S.C. § 1412 and 28 U.S.C. § 1404. Dkt. No.12. After filing its initial motion, FCA retained new counsel who filed a reply to Welch's response on January 15, 2016. In its reply, FCA withdrew its motion to transfer venue and now seeks exclusively to dismiss the complaint with prejudice in its entirety. Dkt. No. 21, at 5. However, the court may transfer a case *sua sponte* to another district, and I address the issue of transfer in this Report and Recommendation.

## ANALYSIS

### Rule 12(b)(6) Motion to Dismiss

A complaint must "contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency of a complaint" under Rule 8(a). Macronix Int'l Co. v. Spansion, Inc., 4. F. Supp. 3d 797, 801 (E.D. Va. 2014). To survive such a motion, the complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 335 U.S. 41, 47 (1957))).

3

The court must construe pro se pleadings liberally, Erickson, 551 U.S. at 94, and must also accept a *pro se* plaintiff's nonconclusory factual allegations as true at the motion to dismiss stage. See Twombly, 550 U.S. at 572; Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (when ruling on 12(b)(6) claim, the court assumes "all well-pleaded, nonconclusory factual allegations in the complaint to be true").

Accordingly, Welch must allege facts which "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555. A plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Id. (internal alterations and quotations omitted). Thus, neither "a formulaic recitation of the elements of a cause of action," id., nor "naked assertions devoid of further factual enhancements" will suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal alterations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The factual allegations must "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, Coleman v. Ct. of Appeals of Md., 132 S. Ct. 1327 (2012) (quoting Ashcroft, 556 U.S. at 678).

Count I - Motor Vehicle Manufacturer's Warranty Adjustment Act – Va. Code § 59.1-207.9

The Motor Vehicle Warranty Enforcement Act ("MWA"), commonly known as the Virginia lemon law:

> creates a remedy for purchasers of motor vehicles against motor vehicle manufacturers if the manufacturer does not conform the motor vehicle to any

> applicable warranty by repairing or correcting any defect or condition which 'significantly impairs the use, market value, or safety of the motor vehicle' after a reasonable number of attempts within eighteen months of delivery of the vehicle.

Parks v. Newmar Corp., 384 F. Supp. 2d 966, 968–69 (W.D. Va. 2005). The MWA defines a "manufacturer" as a "person, partnership, association, corporation or entity engaged in the business of manufacturing or assembling motor vehicles, or of distributing motor vehicles to motor vehicle dealers." Id. at 969 (citing Va. Code § 59.1–207.11). The MWA requires manufacturers to inform a consumer "of any adjustment program applicable to his motor vehicle and, upon request, furnish the consumer with any document issued by a manufacturer pertaining to any adjustment program or to any condition that may substantially affect vehicle durability, reliability or performance." Va. Code § 59.1-207.35.

Welch contends that FCA is responsible for the damage to his vehicle (a 2004 Dodge Durango) because it is a manufacturer under the MWA (Compl. ¶ 52), because he is a consumer under the MWA, and because FCA "failed in its duty to inform Plaintiff of the defect(s) in the Durango." Compl. ¶¶ 52–57. FCA did not exist as an entity until April 28, 2009.[1] Thus it is a factual impossibility that FCA is the "manufacturer" of Welch's vehicle. Additionally, a successful claim under the MWA requires a showing that the manufacturer has failed to conform the vehicle to warranty standards after "a reasonable number of attempts within eighteen months of delivery of the vehicle." Parks, 384 F. Supp. 2d at 968–69. Welch's complaint states that he purchased his vehicle in June 2013, but did not attempt to have it repaired until May 2015,

---

[1] "In reviewing a Rule 12(b)(6) dismissal, [the court] may take judicial notice of matters of public record." Wahi v. Charleston Area Med. Ctr. Inc., 562 F.3d 599, 616 (4th Cir. 2009) (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)). The court may also "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss as long as they are integral to the complaint and authentic." Wahi, 562 F. 3d at 616 (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)). FCA's Exhibit A, attached to its motion to dismiss, is a print out of the Delaware Department of State's Entity Details for FCA, showing it was created on April 28, 2009. Accordingly, I take judicial notice of the fact that FCA was created on April 28, 2009.

approximately 23 months after he purchased it. Thus Welch's claim under the MWA fails because FCA is not the manufacturer of his 2004 Durango and because neither he nor FCA failed to get the vehicle in working order after repair attempts made within eighteen months of delivery. Accordingly, I **RECOMMEND** this claim be **DISMISSED**.

Count II – National Traffic and Motor Vehicle Safety Act – 49 U.S.C. § 301

Welch's second cause of action alleges that FCA violated the National Traffic and Motor Vehicle Safety Act ("MVSA") because it did not issue a recall for the known defects to his vehicle. Compl. ¶ 74. However, the MVSA does not create a private cause of action. At 49 U.S.C. § 30163, the MVSA states "[t]he Attorney General may bring a civil action in a United States District court to enjoin . . . a violation of this chapter or a regulation prescribed or order issued under this chapter" and the sale of defective vehicles and vehicles that do not comply with applicable safety standards established under the MVSA. The MVSA simply does not create a private cause of action that can be brought by anyone other than the Attorney General. See Ayres v. Gen. Motors Corp., 234 F.3d 514, 522 (11th Cir. 2000) (holding that it is "clear that the [MVSA] confers no private cause of action to enforce its notification requirements"); Littel v. Bridgestone/Firestone, Inc., 259 F. Supp. 2d 1016, 1028 (C.D. Cal. 2003) (finding that the MVSA "establishes a right of action by the Attorney General of the United States . . . but does not appear to create a private right of action for injured members of the public"); Burgo v. Volkswagen of Am., 183 F. Supp. 2d 683, 688 (D.N.J. 2001) ("Although the MVSA unquestionably establishes a comprehensive system of oversight regarding tire recalls, it does not create a private right of enforcement . . . Entirely absent from this framework is the right of individuals to bring suit in federal court seeking a recall, or similar injunctive relief"); Campbell v. Gen. Motors Corp., 19 F. Supp. 2d 1260, 1274 (N.D. Ala. 1998) ("the MVSA provides

absolutely no private right of action for consumers"). As a private citizen, Welch has no standing to bring a claim under the MVSA. Accordingly, Welch's claims under the MVSA must fail, and I **RECOMMEND** this count be **DISMISSED**.

Count III – Unjust Enrichment

"Unjust enrichment is an equitable claim arising from the simple principle that 'one person may not enrich himself unjustly at the expense of another.'" Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC, 752 F. Supp. 2d 721, 724 (W.D. Va. 2010) (internal citations omitted). "To prevail on a theory of unjust enrichment, a claimant must show that he: (1) conferred a benefit on another party; (2) the other party knew that claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that would render it inequitable to retain the benefit without paying for its value." Elderberry of Weber City, LLC v. Living Centers-Se., Inc., 958 F. Supp. 2d 623, 636 (W.D. Va. 2013) (citing Odyssey, 752 F. Supp. 2d at 724–25; Nossen v. Hoy, 750 F. Supp. 740, 745 (E.D. Va. 1990)).

Here, Welch alleges that FCA "has been, and continues to be unjustly enriched, to the detriment of and expense of the Plaintiff" because it collected money from the sale of replacement parts to repair Welch's vehicle and for the cost of the repair service performed at the local dealership. Compl. ¶ 84. However, the fact that FCA may have profited from the sale of replacement parts that may have been used in Welch's vehicle does not mean that Welch conferred a benefit upon FCA for which FCA should have reasonably expected to repay him. Welch does not allege that he had any kind of relationship with FCA that would have alerted them to a reasonable expectation of repayment. He also does not allege facts to show that FCA accepted any type of benefit under circumstances that would make such acceptance inequitable.

7

Welch purchased parts from a local dealership that may have purchased those parts from FCA. At best, FCA is an indirect beneficiary of Welch's purchase that had no knowledge of the circumstances that led to his purchase of those parts. Welch's claim for unjust enrichment cannot survive. I **RECOMMEND** that this count be **DISMISSED**.

Count IV – Breach of Warranty under Magnuson-Moss Warranty Act – 15 U.S.C. § 2301

"The Magnuson–Moss Warranty Act [MMWA], 15 U.S.C. § 2301, et seq., provides a method for consumers to sue a warrantor for violations of a written or implied warranty." Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 545 (D. Md. 2011). "While the Act proscribes minimum federal requirements for 'full' warranties, see 15 U.S.C. § 2304(e), it generally 'calls for the application of state written and implied warranty law, not the creation of additional federal law.'" Id. (quoting Monticello v. Winnebago Industries, Inc., 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005)). MMWA allows a plaintiff to bring suit "in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. §2310(d)(1)(B). Paragraph (3) states in relevant part "No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subjection . . . (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." If a plaintiff's claims do not meet the $50,000 threshold, then the district court has no jurisdiction to hear the case. Misel v. Mazda Motor of Am., Inc., 420 F. App'x 272, 274 (4th Cir. 2011) (affirming the district court's dismissal of a MMWA case for lack of jurisdiction where the plaintiffs conceded their damages were less than $50,000). The aggregate amount in controversy cannot be calculated after the inclusion of any pendent state law provisions that provide for treble damages, for example. Id., see also Collins v. Computertraining.com, Inc., 376 F. Supp. 2d 599, 602 (E.D. Va. 2005) ("Thus, the mere fact that plaintiffs are seeking more than

8

$50,000 in damages, spread across the entire lawsuit, is not enough to give this court jurisdiction over the MMWA claim. Plaintiffs must be seeking $50,000 in damages for breach of warranty under the MMWA."); Barnes v. West, Inc., 249 F.Supp.2d 737, 739 n. 4 (E.D. Va. 2003) (holding that a plaintiff cannot aggregate her state law claims to meet the MMWA's amount in controversy requirement).

Welch alleges only $8,830.51 in damages as the cost of the repairs to his vehicle. Though he alleges that the same damage occurred again after the vehicle was repaired, there is no indication that Welch comes close to the $50,000 damage threshold required to trigger this court's jurisdiction. Therefore, Welch fails to state a claim under the MMWA, and I **RECOMMEND** this count be **DISMISSED**.

### Transfer

I recommend dismissal of this action in its entirety for failure to state a claim as the most appropriate course of action for this case. Should the presiding district court judge disagree with this recommendation, I recommend transferring this case to the Bankruptcy Court in the United States District Court for the Southern District of New York to handle Welch's asserted claims because this case arose from and is related to the bankruptcy proceedings pending there.

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b), which states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Welch's claim against FCA, a company that did not exist until after his vehicle was manufactured, necessarily arises in or is related to cases under title 11. This is so because absent the bankruptcy proceedings, FCA could not possibly have had any liability for claims against non-party Chrysler, the manufacturer of

9

Welch's 2004 Dodge Durango. Absent the bankruptcy proceeding and the asset sale, FCA would likely not exist at all.

28 U.S.C § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties."[2] Id. Additionally, there is a "well-settled presumption that 'related to' proceedings should be litigated in the 'home court.'" Dunlap v. Friedman's, Inc., 331 B.R. 674, 678 (S.D. W. Va. 2005); see also Perno v. Chrysler Group, LLC, No. 10-5100, 2011 WL 868899, at *3 (D.N.J. Mar. 10, 2011) ("Generally, courts have concluded that when civil actions are related to a pending bankruptcy proceeding, there is a presumption that the district where the bankruptcy case is pending is the proper venue.") (citing, e.g., Clark v. Chrysler Group, LLC, No 10-3030, 2010 WL 4486927, at *6 (E.D. Pa. Nov. 5, 2010) (transferring Magnuson–Moss claim against Chrysler Group to Southern District of New York, noting "[w]hen a case in which transfer is sought is one related to a bankruptcy proceeding, the district where the bankruptcy action is pending is generally the appropriate venue.")). When faced with a substantially similar case, this court agreed and transferred the matter to the Southern District of New York. See Martin v. Chrysler Group, LLC, 6:12-cv-0060, 2013 WL 5308245, at * 5 (W.D. Va. Sept. 20, 2013) (granting a motion to transfer the case to the Southern District of New York and finding the case "necessarily 'arises in' the bankruptcy case of In re Old Carco, LLC" and because the bankruptcy court had "already determined that matters such as this one, asserting claims against Chrysler Group based on a vehicle manufactured by the Debtors are 'core proceedings' under 28

---

[2] I understand that Defendant has withdrawn its motion to transfer this case to the Southern District of New York. Dkt. No 21, 5. However, nothing in § 1412 requires the motion of a party to transfer venue, and the court can transfer the case sua sponte.

10
Case 7:15-cv-00335-MFU-RSB   Document 31   Filed 06/23/16   Page 10 of 12   Pageid#: 792

U.S.C. § 157 because such matters are 'ancillary to the Sale Order'" entered by the bankruptcy court).

The facts of this case are similar to the cases cited above. Chrysler manufactured Welch's 2004 Dodge Durango and subsequently filed for bankruptcy in the Southern District of New York. See In re Old Carco, LLC, 492 B.R. 392, 396 (Bankr. S.D.N.Y. 2013). On June 1, 2009, the Bankruptcy Court approved a Master Transaction Agreement ("MTA") between Debtor Chrysler and FCA.[3] See Dkt. No. 13-1. Paragraph 59 of that order states "[t]his Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order including to . . . protect the Purchaser against any Claims." In fact, the Bankruptcy Court has handled multiple cases that were transferred to it involving claims similar to Welch's. See, e.g., In re Old Carco, LLC, 492 B.R. 392 (discussing various cases in which the court interpreted and determined the effect of the sales order on vehicle claims brought by purchasers).

Welch's claim against FCA necessarily requires an interpretation of the provisions of the Sale Order and the MTA. While his complaint does not specifically allege the existence of the agreement or the relationship between FCA and Chrysler, FCA cannot be the manufacturer or seller of Welch's vehicle because it did not exist when the vehicle was manufactured. Welch does not allege that he purchased the vehicle from FCA. Thus any liability on the part of FCA must have originated in the Sale Order or in the MTA and Welch's claim against FCA can succeed only if FCA assumed Chrysler's relevant liabilities during the bankruptcy. FCA disputes that it assumed any liability for Welch's claims under these agreements. The most appropriate

---

[3] It appears that at the time of the sale, FCA was known as New Carco. During the hearing on the motion to dismiss, counsel for FCA confirmed that New Carco became known as FCA following a series of name changes. Tr. of Oral Arg. at 9.

venue for resolution of a dispute arising from the MTA is the Bankruptcy Court in the Southern District of New York.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I **RECOMMEND** that this case be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Alternatively, I **RECOMMEND** that an order be entered **TRANSFERRING** this case to the United States District Court of the Southern District of New York for anticipated referral to its bankruptcy court, and **STRIKING** the matter from the active docket of this court.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. All parties are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: June 23, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

12

Case 7:15-cv-00335-MFU-RSB   Document 31   Filed 06/23/16   Page 12 of 12   Pageid#: 794